# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01642-COA

PANOLA COUNTY TAX ASSESSOR, PANOLA            APPELLANTS
COUNTY TAX COLLECTOR, PANOLA
COUNTY CHANCERY CLERK, AND PANOLA
COUNTY, MISSISSIPPI

v.

OAK INVESTMENT CO., GJ TAX SALE              APPELLEES
PROPERTIES LLC, AND TD HOLDINGS LLC

| | |
|---|---|
| DATE OF JUDGMENT: | 10/18/2018 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD JR. |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | DARRIN JAY WESTFAUL |
| ATTORNEY FOR APPELLEES: | JOHN ANDREW HAMMOND |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 06/02/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. This case involves property in Panola County, Mississippi (the property) owned by Rolando Curtis Foods MS Inc. (Rolando Foods). The property was purchased by Oak Investment Co. (Oak), GJ Tax Sale Properties LLC (GJ), and Leslie Johnson at 2012-2015 tax sales. Johnson subsequently deeded to TD Holdings LLC (TD) the interest he acquired in the 2014 and 2015 tax sales. Oak, GJ, and TD are companies that regularly purchase properties at tax sales.

¶2. These entities subsequently filed complaints against Rolando Foods, Panola County,

the Panola County Tax Collector, the Panola County Tax Assessor, and the Panola County Chancery Clerk (collectively Panola County) to set aside the 2012-2015 tax sales. After a bench trial, the Panola County Chancery Court found that the tax sales were void based upon the chancery clerk's failure to provide proper notice. On October 18, 2018, the chancery court entered a judgment providing that Panola's County failure to provide notice made each of the 2012-2015 tax sales void and ordering Panola County to refund the tax sale purchase amounts to Oak, GJ, and TD, which will be collectively referred to as the plaintiffs unless otherwise indicated. Panola County filed its notice of appeal on November 5, 2018.

¶3. Effective July 1, 2019, Mississippi Code Annotated section 27-45-27 was amended to include subsection 27-45-27(2). The amendment provides that a tax-sale purchaser has no right to contest the validity of a tax sale. On appeal, Panola County asserts that the chancery court's judgment must be reversed and rendered because section 27-45-27(2) applies in this matter and, therefore, the plaintiffs have no authority to continue the instant case. Alternatively, Panola County asserts that it provided proper notice in each of the tax sales and, therefore, the tax sales were not void.

¶4. For the reasons discussed below, we address the chancery court's judgment on the merits. Finding no error, we affirm. We deny the plaintiffs' request for damages under Rule 38 of the Mississippi Rules of Appellate Procedure, finding no basis for a determination that Panola County's appeal was frivolous.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶5. The subject property is comprised of 4.2 acres located in the First Judicial District of

Panola County, Mississippi. The property was owned by Rolando Foods, a Mississippi corporation, under a quitclaim deed recorded in Panola County.

¶6.     The following table sets forth certain information contained in the record relating to the subject 2012-2015 tax sales. The "Tax Sale Date" is the date when the Panola County Tax Collector sold the property in a tax sale due to delinquent county taxes for the prior year. The "Purchase Amount" for each sale consists of the delinquent county taxes, plus applicable interest, penalties, and costs. With respect to the "Redemption Expiration Date," a landowner whose land is sold for taxes may redeem the property by paying the delinquent taxes, plus statutory interest and damages, "at any time within two . . . years after the day of sale[.]" Miss. Code Ann. § 27-45-3 (Rev. 2010).[1]

| Tax Sale Date | Purchaser | Purchase Amt. | Redemption Expiration Date |
|---|---|---|---|
| August 27, 2012 | GJ | $17,161.89 | August 27, 2014 |
| August 26, 2013 | Oak | $16,768.16 | August 26, 2015 |
| August 25, 2014 | Leslie Johnson | $14,434. 90 | August 25, 2016 |
| August 31, 2015 | Leslie Johnson | $13,870.82 | August 31, 2017 |

¶7.     On October 29, 2016, Leslie Johnson executed a quitclaim deed in favor of TD and quitclaimed his interest in the property acquired at the 2014 tax sale. On November 28, 2017, Johnson executed a quitclaim deed in favor of TD and quitclaimed his interest in the

---

[1] Under Mississippi Code Annotated section 27-43-1, the chancery clerk must notify the landowner of its redemption rights "within one hundred eighty . . . days and not less than sixty . . . days prior to the expiration of the time of redemption with respect to land sold."

property acquired at the 2015 tax sale.

¶8.     Oak, GJ, and TD subsequently filed complaints, naming Rolando Foods and Panola County as defendants, seeking to set aside the respective tax sales.[2]  The plaintiffs alleged that Panola County failed to strictly comply with the governing tax-sale statutes regarding proper notice to the property owner, Rolando Foods, and, therefore, the tax sales were void and Panola County was obligated to refund each entity their purchase price amounts.  No affirmative relief was sought against Rolando Foods.  Rolando Foods did not file an answer or appear at the subsequent bench trial.[3]  Panola County answered, denying that it failed to abide by the notice requirements under the Mississippi tax-sale statutes.

¶9.     A bench trial was held on May 17, 2018.[4]  One witness testified: Panola County Deputy Chancery Clerk, Judy Tutor.  With respect to the 2012 tax sale, Tutor testified that the maturity date for that sale was August 27, 2014, and the contact the chancery clerk's

---

[2] In particular, Oak filed its "Verified Complaint to Set Aside Tax Sale" in Panola County Chancery Court, Cause Number 16-CV-172, on August 22, 2016, naming Rolando Foods and Panola County as defendants.  GJ filed its "Verified Complaint to Set Aside Tax Sale" on December 21, 2016, in Panola County Chancery Court, Cause Number 17-CV-244, naming the same defendants as Oak.  An order allowing TD to intervene in GJ's cause was entered on January 10, 2018, and on the same day TD filed its third-party "Verified Complaint to Set Aside Tax Sale" against the same defendants.

[3] On July 5, 2018, after trial, but before issuing its opinion and final judgment, the chancery court ordered the plaintiffs to perfect service of process on Rolando Foods. The plaintiffs served Rolando Foods by certified mail, as evidenced by the executed return receipts signed by Roland Butler contained in the record.  Docket entries of default against Rolando Foods were granted October 1, 2018.

[4] The chancery court announced before the start of trial that cause number 16-CV-172 and 17-CV-244 were companion cases and would be consolidated for trial by the parties' agreement.  An order consolidating both causes for all purposes was subsequently entered on October 31, 2018.

office had for Rolando Foods, the property owner, was Roland Butler. The Secretary of State's corporate information for Rolando Foods was entered into evidence as Exhibit 8. This document indicated that Rolando Foods is a Mississippi corporation, and Butler was listed as the President and a Director of Rolando Foods.

¶10. Tutor testified that the chancery clerk's office located Rolando Butler in Maryland, spoke with him on a number of occasions, and corresponded with him via email in June 2014 concerning his payment of the delinquent 2011 taxes. She also testified that the chancery clerk's office sent a redemption notice to Butler in Maryland by certified mail in June 2014, but the "green card" was not returned by the post office and she really "had no idea" what happened to the certified mail notice because "we never got the letter back [either] stating that it was unclaimed." Tutor confirmed that there was no second attempt to notify Butler by certified mail.

¶11. When shown the Secretary of State information for Rolando Foods (Exhibit 8), Tutor confirmed that Rolando Foods was a Mississippi corporation. The Secretary of State corporate information for Rolando Foods indicated that its registered agent was a person by the name of Louise Butler living at 7 Edgewood Drive, 10 Batesville, Mississippi. Tutor confirmed that no certified mailings were sent to Louise Butler, testifying that "[w]e [the chancery clerk's office] didn't even know about Louise Butler," and no certified mailings were made to any other officer or director of Rolando Foods.

¶12. Tutor also confirmed that the chancery clerk's office did not issue notice to the Panola County Sheriff to attempt personal service on Rolando Foods in Mississippi. Tutor testified

5

that personal service was not required "because Mr. [Roland] Butler lived out of state."

¶13.    With respect to the 2013-2015 tax sales, Tutor testified that no redemption notifications at all were sent to Rolando Foods.  Tutor testified that after the tax sales "matured" in the tax purchasers, redemption notices were sent to them.

¶14.    On October 9, 2018, the chancery court issued its opinion setting forth its findings of fact and conclusions of law.  The chancery court found that the 2012 tax sale to GJ was void because the chancery clerk failed to "strictly comply with the [redemption notice] requirements mandated by statute" when it did not issue notice to the Panola County Sheriff "so that the sheriff could have made an attempt to personally serve one of the officers or [the] registered agent of Rolando [Foods]."

¶15.    Regarding the 2013 tax sale to Oak, the chancery court found that because the 2012 tax sale to GJ was void, Rolando Foods's rights "to the subject property were not extinguished at the end of the two-year redemption period in 2014."  As such, "[d]uring the period in which the [chancery clerk] was to give notice to the reputed owner in 2015, the property was still owned by Rolando [Foods]."  The chancery court found that the 2013 tax sale was therefore void because the chancery clerk did not provide notice to Rolando Foods in strict compliance with the redemption-notice requirements.

¶16.    Under the same reasoning, the chancery court found that the 2014 and 2015 tax sales were void because the chancery clerk did not provide notice to Rolando Foods in strict compliance with the redemption-notice requirements.

¶17.    On October 18, 2018, the chancery court entered a judgment providing that the

6

2012-2015 tax sales were void due to the chancery clerk's failure to provide the statutorily-required redemption notification with respect to each sale and ordering Panola County to refund the stipulated tax-sale purchase amounts to Oak, GJ, and TD. Panola County appealed.

¶18. During the pendency of this appeal, the legislature enacted section 27-45-27(2), effective July 1, 2019, which provides that a tax-sale purchaser has no right to contest the validity of a tax sale.

**STANDARD OF REVIEW**

¶19. "This Court maintains a limited review of a chancellor's findings of fact." *Rebuild Am. Inc. v. Norris*, 64 So. 3d 499, 500 (¶7) (Miss. Ct. App. 2010). "We will not reverse the factual findings of the chancellor when supported by substantial evidence unless the Court can say that the findings are manifestly wrong, clearly erroneous, or amount to an abuse of discretion." *Cleveland v. Deutche Bank Nat. Tr. Co.*, 207 So. 3d 710, 714 (¶17) (Miss. Ct. App. 2016). "In matters that are questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of the law." *Rebuild Am.*, 64 So. 3d at 501 (¶7).

**DISCUSSION**

I. **Application of Section 27-45-27(2)**

¶20. In *Sass Muni-V LLC v. DeSoto County*, 170 So. 3d 441 (Miss. 2015), the Mississippi Supreme Court held that a tax-sale purchaser has standing to challenge the validity of a tax sale. *Id.* at 447-48 (¶¶17-18). The plaintiffs in this case challenged the validity of tax sales

7

occurring in 2012-2015, and filed their complaints to set these tax sales aside in 2016 (Oak and GJ) and 2018 (TD). In October 2018, the chancery court issued its opinion and final judgment setting aside the 2012-2015 tax sales and ordering Panola County to refund the plaintiffs' stipulated purchase price amounts. Panola County appealed that judgment on November 1, 2018.

¶21. Effective July 1, 2019, while this appeal was pending, section 27-45-27 was amended to include subsection 25-45-27(2), which provides: "No purchaser of land at any tax sale, nor holder of the legal title under him by descent or distribution, shall have any right of action to challenge the validity of the tax sale." Panola County asserts that as a matter of law, section 27-45-27(2) should be applied retroactively in this matter to reverse and render the chancery court's final judgment voiding the 2012-2015 tax sales and awarding refunds to the plaintiffs. For the reasons addressed below, we do not agree.

¶22. Panola County relies on *Mississippi Department of Corrections v. Roderick & Solange MacArthur Justice Center*, 220 So. 3d 929 (Miss. 2017), a case in which the supreme court recognized the following general principle:

> [I]t is well settled . . . "by the decisions of our Court, and in most every other jurisdiction, that when proceedings are in process under a statute and have not been completed, and have not reached the stage of final judgment, and a new act is passed, modifying the statute under which the proceedings were begun, the new statute becomes integrated into and a part of the old statute as fully as if written therein from the very time the old statute was enacted."

*Id.* at 933 (¶9) (quoting *Oliphant v. The Carthage Bank*, 224 Miss. 386, 410, 80 So. 2d 63, 72 (1955)). The supreme court further recognized:

> The result of this rule is that every right or remedy created solely by the

8

modified statute disappears or falls with the modified statute, unless carried to final judgment before the modification,—save that no such modification shall be permitted to impair the obligation of a contract or to abrogate a vested right.

*Id.* at (¶10) (quoting *Deposit Guar. Bank & Tr. Co. v. Williams*, 193 Miss. 432, 9 So. 2d 638, 639 (1942)).

¶23. The supreme court in *Roderick & Solange MacArthur Justice Center* applied certain statutory disclosure exemptions concerning lethal-injection executions, enacted during the pending appeal, in reversing the chancery court's declaratory judgment that the Justice Center was entitled to this information under its Mississippi Public Records Act (MPRA) request to the Mississippi Department of Corrections (MDOC). *Id.* at 931 (¶¶2-5).

¶24. The Justice Center contended "that it has a private right to the documents, which cannot be divested." *Id.* at 936 (¶22). The supreme court disagreed, finding that "the MPRA establishes a general public right but does not establish any type of private, vested right that can withstand the application of a specific exemption provided by the Legislature. Any rights involved in the present suit are public rights shared by all. . . . Thus, the argument advanced by the Justice Center that the application of the amended law abrogates a vested right . . . should be rejected." *Id.* at 938 (¶¶27-28).

¶25. We find that the supreme court's holding in *Roderick & Solange MacArthur Justice Center* is distinguishable from the facts in the instant case. In particular, we find that the chancery court's final judgment awarding the plaintiffs refunds of their purchase price amounts is a vested right held by them that cannot be abrogated by the Legislature's 2019 enactment of section 27-45-27(2)—a general principle recognized by the supreme court in

9

*Roderick & Solange MacArthur Justice Center*. *Id.* ("no . . . [statutory] modification *shall . . . abrogate a vested right*." (emphasis added)) (quoting *Deposit Guar.*, 193 Miss. 432, 9 So. 2d at 639). The supreme court's decision in *Stone v. McKay Plumbing Co.*, 200 Miss. 792, 30 So. 2d 91 (1947) (*Stone II*) supports our determination that the plaintiffs held a vested right in this case.

¶26.   *Stone v. McKay Plumbing Company* originated when McKay Plumbing sued the state tax commission under a statute authorizing it to seek recovery for sales taxes wrongfully paid. 200 Miss. 792, 797, 26 So. 2d 349, 350 (1946) (*Stone I*). The trial court awarded judgment to McKay Plumbing. *Id.* The court's final judgment was rendered on December 4, 1945, and the state tax commission immediately appealed. *Id.*

¶27.   In March 1946, while McKay Plumbing's case was pending on appeal, the legislature amended the statute to provide that lawsuits to recover taxes must be brought within three years after payment of the taxes. 200 Miss. at 811, 26 So. 2d at 350. In the original appeal (*Stone I*), the supreme court followed the principle that in the absence of a savings clause, "when a right of action . . . is created solely by statute[,] . . . if the statute is . . . amended the effect is the same as had the statute previously existed all the while in the  same language as the amending act." *Id.* at 811-12, 26 So. 2d at 350. This rule, the supreme court held in *Stone I*, did not just apply to actions already instituted, but also to "judgment rendered by the trial court under the old statute, but which judgment is covered by an appeal pending at the time of the repealing or amendatory enactment." *Id.* at 812, 26 So. 2d at 350.[5] Accordingly,

---

[5] Panola County relied on *Stone I* and these rulings in its opening brief, which were rejected by the supreme court in *Stone II*, as discussed above.

the supreme court in *Stone I* reversed and remanded the trial court's judgment in McKay

Plumbing's favor as to payments made more than three years before the action was filed. *Id.*

at 813, 26 So. 2d at 351.

¶28.    A year later, however, the supreme court sustained a suggestion of error and affirmed

the trial court's judgment, finding that under this judgment, McKay Plumbing "had a right

to the money. . . .  It is impossible to escape the conclusion that this judgment conferred upon

appellee a vested right." *Stone II*, 200 Miss. at 814, 30 So. 2d at 92.

¶29.    In addressing whether this vested right could be "taken away merely by legislative

fiat," *id.*, the supreme court in *Stone II* found that it could not, quoting *McCullough v.*

*Commonwealth of Virginia*, 172 U.S. 102, 123-24 (1898), and the principles followed there:

> At the time the judgment was rendered [in McCullough's favor] in the circuit
> court . . . the act of 1882 was in force, and the judgment was rightfully entered
> under the authority of that act.  The writ of error to the court of appeals of the
> state brought the validity of that judgment into review, and the question
> presented to that court was whether, at the time it was rendered, it was rightful
> or not.  *If rightful, the plaintiff therein had a vested right, which no state*
> *legislation could disturb.  It is not within the power of a legislature to take*
> *away rights which have been once vested by a judgment.  Legislation may act*
> *on subsequent proceedings, may abate actions pending, but when those actions*
> *have passed into judgment the power of the legislature to disturb the rights*
> *created thereby ceases*.

*Id.* at 816-17, 30 So. 2d at 93 (emphasis added).  In short, the supreme court in *Stone II*

affirmed the trial court's judgment, and found that it established a "right [that] had vested

before the repealing act. . . and the right so vested cannot be defeated by subsequent

legislation." *Id.* at 818, 30 So. 2d at 94.[6]  We likewise find in this case that the chancery

---

[6] *See State v. Cummings*, 206 Miss. 630, 637-38, 40 So. 2d 587, 588-89 (1949)
(applying *Stone II*); *Conger v. Shaw*, 206 Miss. 590, 605, 40 So. 2d 308, 311 (1949)

court's judgment established rights in plaintiffs' favor before section 27-45-27(2) was enacted and those rights cannot be defeated by that subsequent legislation. *Id.*

¶30. First, like the judgment in *Stone II*, the chancery court's judgment adjudicated that Panola County owed the plaintiffs specific sums of money—the purchase costs paid in their respective tax sales. *See Stone II*, 200 Miss. at 814, 30 So. 2d at 92.

¶31. Second, the judgment fully adjudicated the only issues presented to the court—the validity of the tax sales. It was final for appeal purposes.[7] In this regard, the supreme court in *Stone II* observed that "[i]t should be borne in mind that in this [s]tate an appeal does not vacate the judgment or decree. . . . In no case does the mere fact of an appeal affect the validity of the judgment in the lower court. It remains valid and legal until and unless the Supreme Court holds otherwise." *Id.* at 818, 30 So. 2d at 94 (internal quotation marks

---

(recognizing that the holding in *Stone II* that "not even the legislature could deprive one of vested rights under a final judgment of the trial court, even though an appeal therefrom was then pending . . . ."); *see also Wilson v. William Hall Chevrolet, Inc.*, 871 F. Supp. 279, 280-81 (S.D. Miss. 1994) (recognizing that *Stone II* stands for the proposition that "if a cause of action based on a statute is commenced and concluded by entry of a final judgment, then any subsequent amendment cannot affect the rights acquired by that judgment since the legislature may not 'take away rights which have been once vested by a judgment.'" (quoting *Stone II*, 200 Miss. at 817, 30 So. 2d at 93)); *State ex rel. Pittman v. Ladner*, 512 So. 2d 1271, 1275 (Miss. 1987) (citing *Stone II* for the proposition that "subsequent legislative amendment does not retroactively render [a] pre-amendment judgment void as the entry of such judgment caused right to vest"); *Oliphant*, 224 Miss. at 410, 80 So. 2d at 72 (recognizing the holding in *Stone II* that the taxpayer held "a vested right in the prior judgment . . . [and] the amendment of the law pending an appeal from the judgment could not deprive the judgment creditor of his rights under the law at the time he recovered the judgment in the trial court[.]").

[7] *See Walters v. Walters*, 956 So. 2d 1050, 1053 (¶8) (Miss. Ct. App. 2007) ("A final, appealable, judgment is one that adjudicates the merits of the controversy which settles all issues as to all the parties and requires no further action by the lower court.").

12

omitted). This observation holds true today. *Cf. Smith v. Malouf*, 597 So. 2d 1299, 1301 (Miss. 1992) (holding that an appeal of a judgment in a former lawsuit is res judicata and "that the appeal to the Supreme Court of Mississippi does not prevent it from being res adjudicata. The appeal simply supersedes the enforcement of the judgment.").

¶32. Third, this litigation is between Panola County and the plaintiffs, which are private entities. We therefore find that an additional principle applies to prevent application of section 27-45-27(2) in this case, as follows:

> *In litigation between the state and an individual, where the operative statute has been repealed or amended and the litigation arises out of a pre-repeal, pre-amendment transaction or occurrence, the individual may claim and be given the benefit of the prior law in effect at the operative time where he regards it more favorable to him.* But the converse is not necessarily so. Unless the state holds a contract or otherwise has a vested right, a repealed or amended statute will ordinarily not be enforced against an individual where he regards it as less favorable to him.

*Mississippi Sierra Club Inc. v. Mississippi Dep't of Envtl. Quality*, 819 So. 2d 515, 518 (¶9) (Miss. 2002) (emphasis added) (quoting *Ladner*, 512 So. 2d at 1277)).

¶33. Under these authorities, we find that the chancery court's judgment in this case was a final judgment vesting rights in the plaintiffs to the purchase costs awarded—rights that cannot be divested by applying subsequently enacted section 27-45-27(2). We therefore proceed to discuss the chancery court's judgment on the merits.

## II. Redemption Notice Requirements

¶34. Panola County asserts that the chancery court erred in finding that the tax sales were void because the chancery clerk did not comply with statutory redemption notice requirements. For the reasons addressed below, we find no error in the chancery court's

determination and we therefore affirm its judgment.

¶35. A landowner whose land is sold for taxes may "redeem the property by paying the delinquent taxes, along with statutory damages and interest, within two years after the date of the tax sale." *SASS Muni-V LLC*, 170 So. 3d at 446 (¶14) (citing section 27-45-3). The statutory tax sale notice provisions require the chancery clerk to notify the landowner of its right of redemption prior to the expiration of the redemption period. Miss. Code Ann. §§ 27-43-1 to 27-43-11 (Rev. 2010).

¶36. Section 27-43-1 mandates that:

> The clerk of the chancery court shall, within one hundred eighty (180) days and not less than sixty (60) days prior to the expiration of the time of redemption with respect to land sold, . . . be required to issue notice to the record owner of the land sold as of 180 days prior to the expiration of the time of redemption.

¶37. Section 27-43-3 requires that the redemption notice to the landowner "be given by personal service, by mail, and by publication in an appropriate newspaper." *Cleveland*, 207 So. 3d at 715 (¶20); *see DeWeese Nelson Realty Inc. v. Equity Servs. Co.*, 502 So. 2d 310, 312 (Miss. 1986). "All three requirements must be met for the redemption notice to be complete and in accordance with the statute." *Id.*

¶38. The record reflects that Rolando Foods is the property owner and it is a Mississippi corporation. With respect to a Mississippi resident, like Rolando Foods, section 27-43-3 requires that personal service of the notice be performed as follows:

> The clerk shall issue the notice to the sheriff of the county of the reputed owner's residence, *if he is a resident of the State of Mississippi*, and the sheriff shall be required to serve notice as follows:

14

(a) Upon the reputed owner personally, if he can be found in the county after diligent search and inquiry, by handing him a true copy of the notice;

(b) If the reputed owner cannot be found in the county after diligent search and inquiry, then by leaving a true copy of the notice at his usual place of abode with the spouse of the reputed owner or some other person who lives at his usual place of abode above the age of sixteen (16) years, and willing to receive the copy of the notice; or

(c) If the reputed owner cannot be found after diligent search and inquiry, and if no person above the age of sixteen (16) years who lives at his usual place of abode can be found at his usual place of abode who is willing to receive the copy of the notice, then by posting a true copy of the notice on a door of the reputed owner's usual place of abode.

The sheriff shall make his return to the chancery clerk issuing the notice. . . .

(Emphasis added). Regarding section 27-43-3's requirement that the sheriff attempt to personally serve notice, Rule 4(d)(4) of the Mississippi Rules of Civil Procedure provides that personal service on a corporation may be accomplished by "delivering a copy of the [notice] . . . to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." *See Viking Invs. LLC v. Addison Body Shop Inc*., 931 So. 2d 679, 682 (¶8) (Miss. Ct. App. 2006) (recognizing Rule 4 as guidance for service of a tax-sale notice).

¶39. With respect to providing the notice by mail, section 27-43-3 provides:

The clerk shall also mail a copy of the notice to the reputed owner at his usual street address, if it can be ascertained after diligent search and inquiry, or to his post-office address if only that can be ascertained, and he shall note such action on the tax sales record.

Section 27-43-3 also specifies that notice by mail must be accomplished "by registered or

certified mail" as follows:

> Notice by mail shall be by registered or certified mail. In the event the notice by mail is returned undelivered and the notice as required in this section to be served by the sheriff is returned not found, then the clerk shall make further search and inquiry to ascertain the reputed owner's street and post-office address. If the reputed owner's street or post-office address is ascertained after the additional search and inquiry, the clerk shall again issue notice as set out in this section. If notice is again issued and it is again returned not found and if notice by mail is again returned undelivered, then the clerk shall file an affidavit to that effect and shall specify in the affidavit the acts of search and inquiry made by him in an effort to ascertain the reputed owner's street and post-office address and the affidavit shall be retained as a permanent record in the office of the clerk and that action shall be noted on the tax sale record.

Section 27-43-3 also requires notice by publication.

¶40. In addressing the notice issues in this case, "[w]e recognize that precedent requires the notice statutes to be strictly construed in favor of the landowners, and 'any deviation from the statutorily mandated procedure renders the sale void.'" *Cleveland*, 207 So. 3d at 715 (¶20) (quoting *Rebuild Am.*, 64 So. 3d at 501 (¶8)); *see* Miss. Code Ann. § 27-43-3 ("Should the clerk inadvertently fail to send notice as prescribed in this section, then the sale shall be void . . . .").

¶41. In this case the chancery court found that the chancery clerk did not issue notice to the Panola County Sheriff "so that the sheriff could have made an attempt to personally serve one of the officers or [the] registered agent of Rolando [Foods]." As such, the chancery court found that the 2012 tax sale was void because the chancery clerk did not strictly comply with the tax sale redemption notice requirements.

¶42. We find no error in the chancery court's findings. Section 27-43-3 requires that the chancery clerk "issue the [redemption] notice to the sheriff of the county of the reputed

16

owner's residence, if he is a resident of the State of Mississippi, and the sheriff shall be required to serve notice . . . [u]pon the reputed owner personally, if he can be found in the county after diligent search and inquiry, by handing him a true copy of the notice."

¶43. The record reflects that the corporate information on file with the Mississippi Secretary of State's office shows that Rolando Foods has a registered agent located in Batesville, Panola County, Mississippi. The Tax Sale Affidavit for the 2012 tax sale contains the notation that personal service was not attempted because "not required—out of state." Tutor, the deputy chancery clerk, also confirmed in her testimony at trial that the chancery clerk's office did not issue notice to the Panola County Sheriff to attempt personal service on Rolando Foods in Mississippi. She testified that personal service was not required "because Mr. [Roland] Butler lived out of state." This is incorrect. Rolando Foods was a Mississippi corporation with a registered agent in Mississippi. In strict compliance with 27-43-3, the chancery clerk was required to issue notice to the Panola County Sheriff to personally serve Rolando Foods's Mississippi registered agent. *DeWeese*, 502 So. 2d at 312 (personal service of tax sale redemption notice on Mississippi corporation performed by Hinds County deputy sheriff); *Viking Invs.*, 931 So. 2d at 682 (¶¶8-9) (finding tax sale void for failure to serve property owner Curtis Addison, doing business as Addison Body Shop, Inc.). Because there was no such effort made, we find no error in the chancery court's finding that the 2012 tax sale was void based upon the chancery clerk's failure to strictly comply with the mandated personal service redemption notice requirement. *See* Miss. Code Ann. § 27-43-3.

17

¶44. Panola County asserts that it located Roland Butler, the president and a director of Rolando Foods, who lived in Maryland. It further asserts that sending the redemption notice letter to Butler by certified mail was sufficient because he was "out-of-state" and thus Rule 4(c)(5) of the Mississippi Rules of Civil Procedure allowed the chancery clerk to serve him by certified mail. There is no merit in this argument. Rolando Foods—the property owner—is a domestic, not an out-of-state, corporation with a registered agent in Batesville, Panola County, Mississippi. The statute requires notice by personal delivery, mail, and publication for Mississippi residents, *Cleveland*, 207 So. 3d at 715 (¶20), and no effort at all was made to personally give notice to Rolando Foods. The fact that one officer of that corporation resides out-of-state does not change these requirements.

¶45. In any event, Rule 4(c)(5) specifically provides that "[s]ervice by [certified mail] shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked 'Refused.'" This requirement was in effect in 2014 when service was attempted on Butler by certified mail. Panola County states in its brief that "[e]vidence of certified mail service to the corporation at the address provided to the clerk by Roland Butler was provided by the United States Postal Service. (Ex.28)." But the referenced exhibit is merely an envelope to Roland Butler in Maryland marked "return to sender—not deliverable as addressed—unable to forward." This does not meet Rule 4(c)(5)'s requirements. *Pritchard v. Pritchard*, 282 So. 3d 809, 814 (¶21) (Miss. Ct. App. 2019) ("For service to be effective, an undelivered mailing must actually have been refused by the defendant, as evidenced by the returned envelope marked 'refused.' A return envelope

18

marked 'unclaimed' is insufficient to satisfy service requirements under Rule 4(c)(5).") (emphasis omitted). Specifically, the record does not contain a return receipt or a returned envelope marked "Refused." As Tutor testified at trial, the "green card" associated with the June 2014 notice sent certified mail was not returned by the post office, and she really "had no idea" what happened to the certified mail notice because "we never got the letter back [either] stating that it was unclaimed." Tutor also confirmed at trial that the chancery clerk did not make a second attempt to notify Butler by certified mail.

¶46. Because failure to comply with the notice requirements to Rolando Foods meant that the 2012 tax sale was void, title remained with Rolando Foods and the chancery clerk was required to be provide redemption notices to it for the 2013-2015 tax sales. Indeed, as the supreme court held in *City of Horn Lake v. Sass Muni-V LLC*, 268 So. 3d 514, 518 (¶13) (Miss. 2018), "the chancery clerk's failure to comply fully with the statutory [tax-sale] notice requirements" renders "the tax sale . . . void ab initio." In this regard, "[a] transaction that is 'void ab initio' is null and void from its inception, and as a matter of law it is as if the transaction never even happened." *Rebuild Am. Inc. v. Drew*, 281 So. 3d 92, 100-01 (¶29) (Miss. Ct. App. 2019). In *Drew*, this Court applied this rule to a series of tax sales and determined:

> Drew [, the landowner,] was entitled to notice of each respective tax sale. As the chancery court ruled in *Drew I*, the 2008 tax sale was void for lack of proper notice to Drew. As a result, the 2008 sale was not only void but "void ab initio"—void from the very beginning, as if it never happened. Therefore, Drew remained the rightful owner of the property and was entitled to statutory notice of the 2009 tax sale. There is no dispute that the chancery clerk again failed to provide Drew with statutory notice of the 2009 tax sale. Therefore, the 2009 tax sale was also void ab initio, and Drew remained the rightful

19

owner entitled to statutory notice of the 2010 tax sale. Finally, there is no dispute that the chancery clerk did not provide Drew with statutory notice of the 2010 tax sale. Accordingly, that sale was also void ab initio. Thus, each sale at issue in this case was void ab initio due to a failure to comply with statutory notice requirements. Therefore, the chancery court properly set aside the tax sales and declared Drew the rightful owner of the property.

*Id.* at 101 (¶30).

¶47. The same rule applies in the instant case. The 2012 tax sale was void ab initio and thus Rolando Foods "remained the rightful owner of the property and was entitled to statutory notice of the [2013] tax sale." *Id.* The record reflects that the chancery clerk did not provide notice of any kind to Rolando Foods with respect to the 2013 sale, the 2014 tax sale, or the 2015 tax sale. All were therefore void ab initio. *Id.* We find no error in the chancery court determining that the 2012-2015 tax sales were void, and ordering Panola County to refund the purchase price amounts to the plaintiffs.

### III. Frivolous Appeal

¶48. Oak, GJ, and TD assert that Panola County's appeal is frivolous under Rule 38 of the Mississippi Rules of Appellate Procedure and that they are therefore entitled to damages under that rule. "An appeal is frivolous when the appellant has no hope of success." *Ferrell v. Cole* [*Matter of Estate of Cole*], 256 So. 3d 1156, 1160 (¶13) (Miss. 2018). We find that this is clearly a complex case requiring extensive analysis with respect to the application of section 27-45-27(2). Accordingly, we find no basis for a determination that Panola County had "no hope of success" on appeal. We "disagree that the appeal is frivolous, and we decline to award damages and appeal costs to [Appellees Oak, GJ, and TD]." *Garner v. Smith*, 277 So. 3d 536, 542 (¶20) (Miss. 2019) (denying appellee's Rule 38 motion raised in

20

appellee's brief without separate motion).

¶49.    **AFFIRMED**.

   **BARNES, C.J., J. WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**